UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MILTON L. JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>LONNIE G. BUNCH, III,<br>Secretary of the Smithsonian Institution<br><br>Defendant. | Civil Action No. 22-2240 (BAH) |

**DEFENDANT'S REPLY**
**IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS


Table of Contents ..... i

Table of Authorities ..... ii

Introduction ..... 1

Argument ..... 1

I. Jackson Fails to Genuinely Dispute Any of the Smithsonian's Material Facts. ..... 2

II. Plaintiff Failed To Exhaust Several of His Claims. ..... 8

III. A Reasonable Jury Could Not Conclude that Jackson Was Subjected to Race or Sex Based Discrimination or Retaliation. ..... 10

A. Jackson Cannot Establish A Prima Facie Case of Discrimination or Retaliation. ..... 10

B. The Smithsonian Had Legitimate, Non-Discriminatory, and Non-Retaliatory Reasons For Its Actions. ..... 11

IV. Plaintiff's Hostile Work Environment Claims Fails. ..... 13

Conclusion ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adesalu v. Copps*,
606 F. Supp. 2d 97 (D.D.C. 2009) ........ 2, 8, 9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 1, 5

*Babb v. Wilkie*,
589 U.S. 399 (2020) ........ 10

*Bergbauer v. Mabus*,
934 F. Supp. 2d 55 (D.D.C. 2013) ........ 14

*Bonieskie v. Mukasey*,
540 F.Supp.2d 190 (D.D.C. 2008) ........ 3

*Bortell v. Eli Lilly & Co.*,
406 F. Supp. 2d 1 (D.D.C. 2005) ........ 7, 12

*Bowden v. Clough*,
658 F. Supp. 2d 61 (D.D.C. 2009) ........ 8

*Bowden v. United States*,
106 F.3d 433 (D.C. Cir. 1997) ........ 9

*Broderick v. Donaldson*,
437 F.3d 1226 (D.C. Cir. 2006) ........ 10

*Brown v. Vance-Cooks*,
920 F. Supp. 2d 61 (D.D.C. Feb. 1, 2013) ........ 13

*Burley v. Nat'l Passenger R. Corp.*,
801 F.3d 290 (D.C. Cir. 2015) ........ 7

*Burley v. Nat'l Passenger Rail Corp.*,
33 F. Supp. 3d 61 (D.D.C. 2014) ........ 12

*Burroughs v. Noem*,
No. 23-cv-3271, 2025 WL 561285 (D.D.C. Feb. 20, 2025) ........ 10

*Camara v. Mastro's Rests. LLC*,
952 F.3d 372 (D.C. Cir. 2020) ........ 3

*Collier v. Ashworth*,
No. 23-5291, 2025 WL 3633340 (D.C. Cir. Dec. 15, 2025) .................................................... 2

*Davila v. Mayorkas*,
Civ. A. No. 22-357 (CRC), 2023 WL 2072455 (D.D.C. Feb. 17, 2023)................................ 13

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)................................................................................................................ 13

*George v. Leavitt*,
407 F.3d 405 (D.C. Cir. 2005) ............................................................................................ 7, 13

*Hamilton v. Geithner*,
666 F.3d 1344 (D.C. Cir. 2012) ............................................................................................. 11

*Matthews v. Hesburgh*,
504 F. Supp. 108 (D.D.C. 1980) ............................................................................................... 3

*Mokhtar v. Kerry*,
83 F. Supp. 3d 49 (D.D.C. 2015) .............................................................................................. 3

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024)................................................................................................................ 10

*Ricci v. Kerry*,
Civ. A. No. 11-2185, 2013 WL 5329049 (D.D.C. Sept. 23, 2013) ........................................... 9

*United Mine Workers of America 1974 Pension v. Pittscon Co.*,
984 F.2d 469 (D.C. Cir. 1993) ................................................................................................... 1

*Vatel v. Alliance of Auto. Mfrs.*,
627 F.3d 1245 (D.C. Cir. 2011) ............................................................................................. 13

*Young v. Perdue*, Civ. A.,
No. 19-2144 (RC), 2024 WL 3967358 (D.D.C. Aug. 26, 2024) ............................................... 5

**Rules**

Fed. R. Evid. 602 ............................................................................................................. 3, 12

**Other Authorities**

*TY S. v. Bunch*,
EEOC Doc 2021000775, 2022 WL 1631917 (EEOC May 2, 2022).......................................... 5

## INTRODUCTION

Defendant Lonnie G. Bunch III, Secretary of the Smithsonian Institution (the "Smithsonian"), respectfully submits this reply in further support of his Motion for Summary Judgment ("Def.'s Mot.," ECF No. 55). Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opp'n," ECF No. 66), fails to create any genuine disputes of material facts. The Court should therefore grant summary judgment in the Smithsonian's favor on each of Plaintiff's claims.

Plaintiff Milton Jackson was terminated during his probationary period following his poor performance as the Major Gifts Officer at the Smithsonian's National Museum of African Art (the "Museum"). Jackson's probationary discharge was a product of his inability to fundraise major gifts for the Museum. The record does not support his claims of race or sex-based discrimination and retaliation. Nor do any of the claims rise to the level of a hostile work environment in violation of Title VII. Plaintiff also has failed to raise any genuine dispute with respect to the Smithsonian's Local Rule 7(h) statement of undisputed material facts that warrants denying the Smithsonian's motion. At bottom, because the Smithsonian proffered legitimate, non-discriminatory, and non-retaliatory reasons for its actions, and Jackson has failed to raise an inference that those reasons are pretextual, the Court should grant the Smithsonian's motion for summary judgment and enter judgment in its favor.

## ARGUMENT

The Smithsonian submitted a well-supported motion for summary judgment ("Mot.," ECF No. 55), which shifted the burden to Plaintiff to submit "sufficient evidence . . . for a jury to return a verdict for [Jackson]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also United Mine Workers of America 1974 Pension v. Pittscon Co.*, 984 F.2d 469, 475-76 (D.C. Cir. 1993) (noting that when confronted with a "well supported motion for summary judgment," the

nonmoving party must submit sufficient extrinsic evidence "necessary to undermine or contradict the [moving party's] evidence"); *Collier v. Ashworth*, No. 23-5291, 2025 WL 3633340, at *2 (D.C. Cir. Dec. 15, 2025) ("Once the moving party satisfies his initial burden, the burden shifts to the nonmoving party, who must 'either rehabilitate the evidence attacked in the moving party's papers, [or] produce additional evidence showing the existence of a genuine issue for trial . . .'") (citation modified). Jackson does not meet that burden, and the Court should grant the Smithsonian's motion for summary judgment.

## I. **Jackson Fails to Genuinely Dispute Any of the Smithsonian's Material Facts.**

Consistent with Local Civil Rule 7(h), the Smithsonian's motion was accompanied by a Statement of Undisputed Material Facts, each with reference to record support. *See generally* Def.'s Stmt. (ECF No. 55-1). Jackson admits numerous of those material facts. *See* Statement of Genuine Issues in Opposition to Defendant's Statement of Undisputed Material Facts ("Pl.'s Stmt.," ECF No. 66-2).[1] And while he purports to dispute some statements, he fails to genuinely dispute them as addressed below.

Of the facts Jackson purports to dispute, most of his contrary contentions are not supported by any record evidence, or only by Jackson's own conclusory statements in an affidavit from proceedings before the Equal Employment Opportunity Commission ("EEOC"). *See* Pl.'s Stmt. ¶¶ 5, 10, 14, 22-23, 28, 33-37, 39-41, 47, 54, 56-59, 61-62, 63-69. "The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial." *Adesalu v. Copps*, 606 F. Supp. 2d 97, 100 (D.D.C.

---

[1] Specifically, Jackson admits to the following paragraphs in facts: Pl.'s Stmt. ¶¶ 1-4, 6-9, 11-13, ¶¶ 63-64.

2009). "[T]his Court has explained that '[s]ummary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements.'" *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 61 (D.D.C. 2015), *aff'd*, No. 15-5137, 2015 WL 9309960 (D.C. Cir. Dec. 4, 2015) (quoting *Bonieskie v. Mukasey*, 540 F.Supp.2d 190, 195 (D.D.C. 2008) (collecting cases); *see also Matthews v. Hesburgh*, 504 F. Supp. 108, 114 n.16 (D.D.C. 1980) ("Mere allegations even in an affidavit, unsupported by specific facts, are insufficient to resist a motion for summary judgment."). To be clear, "it is the 'conclusory allegations of [Jackson's] . . . affidavit,' not its self-serving nature, that render it inadequate." *Camara v. Mastro's Rests. LLC*, 952 F.3d 372, 374 (D.C. Cir. 2020). The Court should deny Jackson's attempts to manufacture factual disputes.

Jackson also references affidavits from Frank Esposito (White, Male), Dr. Lanisa Kitchiner (African American, Female), Eddie Burke (Black, Male), and Sarah Holmes (White, Female), which Defendant assumes are their affidavits from the administrative proceedings. *See* Pl.'s Stmt. ¶¶ 13-15, 18-20, 24-25, 30-32, 38, 50-58, 60; *see also id.* at 13-14. But Jackson does not specify the aspects of these affidavits he wishes the Court to consider, and regardless, none of the evidence he cites is sufficient to defeat summary judgment as a matter of law.

Specifically, none of those witnesses present genuine issues for trial because none was in a fundraising position and thus are not competent to testify regarding the expectations of a Major Gifts Officer, the position Jackson held. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Esposito was an Education Support Specialist, not a fundraiser, and unlike Jackson, had already completed his probationary period. *See* Reply Ex. 1 (Add'l ROI Excerpts) at SI 000900. Kitchiner was a Senior Educator for the Museum, not in a fundraising

position. *See* Def.'s Stmt. ¶¶ 54-55. Burke was a Public Affairs Specialist, not a fundraiser, who had completed his probationary period. *See* Reply Ex. 1 (Add'l ROI Excerpts) at SI 000890. Jackson points to nothing showing that Esposito, Kitchiner, or Burke have any "personal knowledge" of what is expected of a Major Gifts Officer, and as a result, has not refuted the Smithsonian's legitimate, nondiscriminatory and nonretaliatory reasons for its actions. *See* Def.'s Mot. at 17-23; *see also infra* at 5-7.

Moreover, Jackson's former coworker, Holmes, noted that Jackson's supervisor, Graves, treated him similarly to other employees; while Jackson disputes those facts, he offers nothing by way of admissible evidence to refute Holmes's testimony. *See* Def.'s Stmt. ¶¶ 56-58; Pl.'s Stmt. ¶¶ 56-58. In fact, the sworn affidavits in the administrative proceeding reflect that Graves may have had a difficult personality and treated all employees similarly regardless of race or sex. *See* Def.'s Stmt. Ex. A, ROI Excerpts (ECF No. 55-1) at SI 000874 (Bonnie Berry (White, Female) testifying that Graves made her job "very difficult"), SI 000912 (noting "others were treated in similar ways by Marie Graves," such as "negating input"). Further, Jackson himself testified that Graves disparaged several employees across races and sexes, including Anchin (White, Female), Berry (White, Female), Esposito (White, Male), and Burke (Black Male). *See* Def.'s Stmt. ¶ 56.

Finally, Jackson purports to dispute "in part" several statements of fact but does not genuinely dispute those facts, essentially admitting the crux of the Smithsonian's argument. *See, e.g.*, Pl.'s Stmt. ¶ 10 ("Undisputed that the position focused on cultivating high-capacity donors" in the range of $1 million to $1.5 million); ¶ 14 (admitting that the $40,000 gift-in-kind was his only fundraised amount); ¶ 16 ("Undisputed that Jackson received his final paycheck on December 18, 2015); ¶ 17 (admitting that Plaintiff was counseled early on regarding management of Advisory Board); ¶¶ 43-46 (agreeing that Smithsonian has an automated exit clearance process and Plaintiff

received his last paycheck on December 18, 2015); ¶ 54 ("Undisputed that Dr. Kitchiner did not report to Graves and was an educator, not a fundraiser"); ¶ 59 ("Undisputed that Jackson's first [EEO] contact was January 14, 2016"); ¶¶ 61-62 ("Undisputed that Jackson was notified of the 45-day period on October 26, 2015 and stated he would pursue legal action"); ¶¶ 65-69 (agreeing with Defendant's summary of the procedural history and the fact that the EEOC framed Plaintiff's 13 claims[2] during the administrative process). Jackson's purported denials are thus the sort of "conclusory assertions offered without any evidentiary support," *Young v. Perdue*, Civ. A. No. 19-2144 (RC), 2024 WL 3967358, at *3 (D.D.C. Aug. 26, 2024), that do not "affect the outcome of the suit," *Anderson*, 477 U.S. at 248.

Nor do Jackson's additional nine alleged disputed facts warrant trial. *See* Pl.'s Stmt. at 13-14. Again, Plaintiff does not provide the evidence necessary to defeat Defendant's well supported motion for summary judgment. Further, Plaintiff is simply mistaken as to each of those alleged disputes:

1. <u>Advisory Board Interaction</u>: As detailed in the Smithsonian's Motion, Graves (Black, Female), as Jackson's supervisor, informed him that she and the Museum's then-Director Johnetta Cole (Black, Female) would manage the Museum's relationship with the Advisory Board. Def.'s Mot. at 4; Def.'s Stmt. ¶ 17. This was consistent with the Museum's practice and Dr. Cole confirmed as much. Def.'s Stmt. Ex. A, ROI Excerpts (ECF No. 55-1) at SI 000767, SI 000813 (explaining that contacts with the Advisory Board "should be made by the Associate Director for

---

[2] Jackson "disputes Defendant's characterization" of the thirteen claims for adjudication in the administrative proceedings, Pl.'s Stmt. § II, but the characterization of those claims was based on Plaintiff's own complaint before the EEOC. *See TY S. v. Bunch*, EEOC Doc 2021000775, 2022 WL 1631917, at *2-3 (EEOC May 2, 2022).

Advancement," who was Ms. Graves). There is nothing about this fact that suggests discrimination or retaliation based on a protected class.

2. Travel and Purchase Cards: When discussing his grievances about denied travel requests and canceled purchase cards, Jackson omits his role in those matters. He pursued travel to events with questionable relationships to the Museum, including an "Earth Day" event to Texas. *See* Def.'s Mot. at 3; Def.'s Stmt. ¶ 34. It is difficult to see how such an event relates to the National Museum for African Art. Even still, Graves ultimately approved that travel after asking Jackson to explain his strategy. Def.'s Stmt. ¶¶ 33-35. Graves denied other travel requests, including attendance at golf tournaments in North Carolina and California, and asked Jackson to "please think about this from a donor's prospective [sic]. If a donor feels we'll travel 3,000 miles to play golf, I worry that he may feel we will fail to proper [sic] steward their gift or even worse, that we do not need their money and that is not the image we wish to convey to our donors." *See* Def.'s Stmt. Ex. N, Jackson Jul. 28, 2015 Email at SI 000292; *see also* Def.'s Stmt. ¶ 38. Moreover, as a probationary hire, Jackson was supposed to focus his fundraising efforts on the local Washington, D.C. Area, and he never seemed to have a strategy for successful fundraising, which countered against travel when the Museum's budget was limited. Def.'s Stmt. Ex. A, ROI Excerpts at SI 000774-775, SI 000818; *see also* Def.'s Mot. at 19-20. Plaintiff also ran afoul of the Smithsonian's policy regarding the use of a Smithsonian charge card by submitting for reimbursement unauthorized and personal expenses. Def.'s Mot. at 3; Def.'s Stmt. ¶¶ 24-25. If Plaintiff's purchase card access was limited, he has only himself to blame.

3. Disney: Jackson makes much of the fact that Cole, the then-Museum Director, traveled to California with Colleen Morith (White, Female) to cultivate a donor, which Jackson contends, without evidence, was Disney. But Morith was not in her probationary period like

Jackson, and in fact, Jackson traveled before Morith ever did, and she was not provided with a purchase card. *See* Def.'s Stmt. Ex. A, ROI Excerpts at SI 000920; Def.'s Stmt. ¶ 53. Jackson points to nothing in the record to suggest that Cole's visit with Morith to California had anything at all to do with Jackson's race or sex. Nor was Morith similarly situated to Jackson and thus any alleged different treatment she received cannot raise an inference of discrimination. *See George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) ("EPA is correct that we have held that probationary employees and permanent employees are not similarly situated[.]")

4. Alleged White, Female Probationary Employee: Jackson offers no evidence to even ascertain the relevance of this alleged disputed fact. However, it appears that this individual reported to Kitchiner, which would not be an adequate comparator to Plaintiff who is in a different supervisory chain and different position. *See* Def.'s Stmt. Ex. A, ROI Excerpts at SI 000838. Regardless, Kitchiner's hearsay about an irrelevant employee's conduct is not competent evidence that can defeat summary judgment. *See Bortell v. Eli Lilly & Co.*, 406 F. Supp. 2d 1, 11 (D.D.C. 2005) ("the general rule is that 'hearsay evidence cannot be considered on a motion for summary judgment'").

5. Morith: Morith is not an appropriate comparator to Plaintiff because Jackson does not "present[] evidence suggesting that the [Smithsonian] treated [Morith] more favorably in the same factual circumstances." *Burley v. Nat'l Passenger R. Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015); *see also* Def.'s Stmt. ¶¶ 50-53.

6. Graves: As explained in Defendant's Motion, multiple museum employees observed that Graves did not discriminate, but in their view suffered from professional insecurities, could be a difficult personality, and made disparaging comments about various employees

regardless of race or sex. Def.'s Stmt. ¶ 56. This conduct was not limited to Jackson, which Jackson conceded, *id.,* and thus does not raise an inference of discriminatory treatment.

7. Background Investigation: Jackson appears to refer to a disagreement between Graves and him regarding the timing for their in-office meeting. *See* Reply Ex. 1 (Add'l ROI Excerpts) at SI 000733. It is not clear how this can be characterized as a "background investigation," but what is clear is that this minor scheduling back-and-forth does not present a material issue for trial. Title VII is not a civility code. *Bowden v. Clough*, 658 F. Supp. 2d 61, 84-85 (D.D.C. 2009).

8. Plaintiff's Fundraising: In terms of funds, it is undisputed that during his tenure as the Major Gifts Officer, Plaintiff secured only a $40,000 in-kind scientific equipment donation to the Museum, which focuses on African art. *See* Def.'s Stmt. Ex. C, Plaintiff's Dep. at SI 001206-07.

9. Alleged Pattern: Jackson does not cite any record evidence in support of this alleged fact, and thus it cannot create a genuine issue for trial. *See Adesalu*, 606 F. Supp. 2d at 100.

Because Jackson has either admitted or failed to create genuine disputes on every fact contained in the Smithsonian's Statement, the Court should treat those facts as undisputed and enter summary judgment in Defendant's favor.

## II. Plaintiff Failed To Exhaust Several of His Claims.

Supported by the record, the Smithsonian's Motion demonstrated why several of Jackson's claims—all except for his alleged delayed paycheck—fail for lack of administrative exhaustion. *See* Def.'s Mot. at 6-8. Jackson's arguments to the contrary are unavailing.

First, Jackson incorrectly contends that the forty-five day period was equitably extended. Opp'n at 11. Not so. Jackson was notified on October 26, 2015, of his separation and the separation notice informed him that he had forty-five days to contact an EEO counselor. Def.'s

Mot. Ex. 1, Def.'s Stmt. (ECF No. 15-1) ¶ 15; *see also id.* Ex. A, ROI Excerpts at SI 001077. Further, it is undisputed that Jackson did not contact the Smithsonian's EEO office until January 14, 2016. *See* Pl.'s Stmt. ¶ 59 ("Undisputed that Jackson's first OEEMA contact was January 14, 2016"). Jackson needed to contact the EEO office by December 10, 2015, and he did not do so.

Jackson argues that the deadline should be extended because he alleges that he was "misinformed" about his EEO claims on July 31, 2015. Pl.'s Stmt. ¶ 59. This argument fails for two reasons. The EEO counselor at the time, Shadella Davis, affirmed that she spoke to Jackson for the first time on January 14, 2016, and that she never spoke to him in July 2015 about his claims. *See* Def.'s Stmt. Ex. A, ROI Excerpts at SI 000948-49. Further, even were the Court to assume such a conversation occurred on July 31, 2015—despite that absence of record evidence to that effect—that conversation would have predated the separation and thus could not qualify as EEO contact for the separation. Further, it would not change the fact that the Smithsonian informed Jackson of his EEO rights on October 26, 2015, and Jackson still did not engage in EEO contact concerning the separation until January 14, 2016. Thus, the record does not reflect that Jackson was misled about the period for contacting an EEO counselor in the separation notice nor is this the sort of "extraordinary and carefully circumscribed instances" that would permit application of the doctrine of equitable tolling. *Ricci v. Kerry*, Civ. A. No. 11-2185, 2013 WL 5329049, at *3 (D.D.C. Sept. 23, 2013). Accordingly, claims that arose before November 30, 2015—forty-five-days before he contacted the EEO Office—should be dismissed as untimely.

Second, Jackson argues that the Smithsonian waived its timeliness argument under *Bowden v. United States*, 106 F.3d 433 (D.C. Cir. 1997). Opp'n at 12. However, unlike in *Bowden*, the Smithsonian asserted the issue of Jackson's untimely contact to the Smithsonian's EEO office during the administrative proceedings. *See* Reply Ex. 2, SI EEOC MSJ at 1-2, 12, 20 (attached

hereto); *see also Burroughs v. Noem*, No. 23-cv-3271, 2025 WL 561285, at *4 (D.D.C. Feb. 20, 2025). Defendant also raised this defense in its Answer. Answer (ECF No. 17) at 1-2.

Finally, as detailed in Defendant's Motion, Def.'s Mot. at 6-8, the four unexhausted claims that were not raised in the administrative process should be dismissed.

## III. A Reasonable Jury Could Not Conclude that Jackson Was Subjected to Race or Sex Based Discrimination or Retaliation.

Supported by the record, the Smithsonian's motion sets forth the legitimate, non-discriminatory reasons for each of Plaintiff's claims. Def.'s Mot. at 17-23. Jackson presents no evidence from which a reasonable juror could conclude that the Smithsonian's legitimate, non-discriminatory reasons were a pretext for unlawful discrimination based on Jackson's race or sex or retaliation for prior protected activity.

### A. Jackson Cannot Establish A Prima Facie Case of Discrimination or Retaliation.

For the reasons articulated in Defendant's Motion, Def.'s Mot. at 9-17, none of the employment actions that Jackson alleges to be discriminatory or retaliatory, except his employment termination, constituted an adverse personnel action under *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) and *Babb v. Wilkie*, 589 U.S. 399 (2020). Jackson appears to concede as much because he does not attempt to grapple with the Smithsonian's arguments under *Babb* or the Civil Service Reform Act, 5 U.S.C. § 2302(a)(2)(A)(i)–(xii). Opp'n at 13-14; *see also* Def.'s Mot. at 9-17. Likewise, the Supreme Court's decision in *Muldrow* did not change the applicable standard for retaliation claims. *Muldrow*, 601 U.S. at 357-58.

Further, with respect to Jackson's retaliation claim, it is undisputed that Jackson did not contact the EEO office until January 14, 2016. Pl.'s Stmt. ¶ 59. Even if "no magic words are required" to engage in a protected activity, Opp'n at 16 (quoting *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006)), at a minimum Jackson was required to raise unlawful discrimination

to the Smithsonian's attention, and there is no evidence that occurred before January 14, 2016. *See* Def.'s Mot. at 6-8; *see also* Def.'s Stmt. ¶¶ 15, 59. Plaintiff does not point to any evidence that he ever raised discrimination in his alleged conversations about workplace grievances. Opp'n at 16. Plaintiff cannot base a retaliation claim on acts that precede protected conduct. Indeed, Jackson's supervisors, Graves and Cole, did not know about his protected activity. *See* Def.'s Mot. at 17.

Nor is the April 15, 2015, all-staff meeting with the Smithsonian's Ombudsman, Human Resources, and Employee Assistance Office considered prior EEO activity. Opp'n at 8. That meeting was for all employees and was an opportunity to share staff-wide issues, with no record evidence suggesting that the meeting focused on race or sex. *See* Ex. A to Def.'s Stmt., ROI Excerpts (ECF No. 55-1) at SI 00690, SI 00847. Moreover, the Ombudsman at the time testified that Jackson only reported to her that his work situation was "unpleasant," and made no mention of race or sex-based animus. *See* Def.'s Stmt. Ex. A, ROI Excerpts at SI 000951-52.

**B. The Smithsonian Had Legitimate, Non-Discriminatory, and Non-Retaliatory Reasons For Its Actions.**

Supported by the record, the Smithsonian established the legitimate, non-discriminatory and non-retaliatory reasons for each of Jackson's claims. Def.'s Mot. at 17-23; *see also supra* at 5-8. At a minimum, Jackson was required to submit evidence sufficient to rebut the Smithsonian's "stated explanation to avoid summary judgment." *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012). He has failed to offer any such evidence from which a reasonable juror could conclude that the Smithsonian's legitimate reasons were a pretext for unlawful discrimination or retaliation.

To begin, the record does not reflect that Jackson was replaced by a "less-qualified employee," as Jackson insists. Opp'n at 14. Instead, the record reflects Jackson's poor job performance despite repeated counseling from his supervisor. *See* Def.'s Stmt. ¶¶ 17-32; *see also*

Def.'s Mot. at 20-22. To the extent Jackson relies on Kitchiner's subjective belief, she was in a different position and different supervisory chain, and her speculative testimony that the Museum wished to replace Plaintiff with Morith was without the requisite personal knowledge. *See* Fed. R. Evid. 602. Kitchiner said that "Graves told [her] that [Graves] did not think Jackson would pass his probation because Kreamer wanted Colleen Morith to serve as Major Gifts Officer." To the extent this purports to state Kreamer's alleged preferences, it is inadmissible hearsay that cannot defeat summary judgment. *See Bortell*, 406 F. Supp. 2d at 11. Further, Kitchiner never stated that her belief regarding Jackson's treatment was based on discriminatory or retaliatory animus. Ex. 1, Def.'s Stmt. Ex. A, ROI Excerpts A at SI 000846.

Plaintiff's reference to Kitchiner's female, probationary employee Allison Hartley, Opp'n at 7, is similarly unavailing. Hartley is not an appropriate comparator for Jackson as they were in vastly different positions and reported to different supervisors. Jackson was the Major Gifts Officer handling high-dollar advancement efforts for the Museum at a GS-13 level, and Hartley was an Education Programs Assistant at a GS-5. *See* Def.'s Stmt. Ex. A, ROI Excerpts at SI 00686 (compare "Senior Advancement Program Specialist" with "Program Assistant (Youth Engagement)"); *see also* Reply Ex. 3, Complainant's Resp. to EEOC Discovery Requests (attached hereto) at SI 01306. Hartley does not come close to a "similarly situated employee" for purposes of Title VII disparate treatment. *See Burley v. Nat'l Passenger Rail Corp.*, 33 F. Supp. 3d 61, 73 (D.D.C. 2014) (discussing the standard for analyzing comparators, including "whether the alleged comparators dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct . . . " and noting that "[i]f no reasonable juror could conclude that two employees were similarly situated, then a court may find they were not similarly situated as a matter of law." (citation modified)).

The record instead establishes that the Smithsonian terminated Jackson's employment for one of the most "common legitimate reasons for discharge: performance below the employer's legitimate expectations." *George*, 407 F.3d at 412. Jackson, as the Museum's major gifts officer, was expected to fundraise large amounts, but he did not raise any funds for the Museum after eight months of employment. *See* Def.'s Stmt. ¶¶ 9-15, 17-42. Jackson was hired by Graves, and she and Cole were excited about Jackson joining the Museum, which weighs against any discriminatory or retaliatory inference. *See* Def.'s Mot. at 22 (citing *Brown v. Vance-Cooks*, 920 F. Supp. 2d 61, 69 (D.D.C. Feb. 1, 2013)); *see also Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) ("Vatel's argument faces a significant initial hurdle in that McCurdy himself selected Vatel to be his assistant less than a year before her dismissal. If McCurdy did not want to work with Vatel because of her race or gender, it would be odd to select her and then immediately start ginning up reasons to dismiss her."). And throughout his probationary period Graves counseled Jackson. *See* Def.'s Stmt. ¶¶ 25, 27, 29, 31-32, 40; *see also* Def.'s Mot. at 3-4, 22. Jackson argues that the counseling was "sabotage," Opp'n at 9, but he offers no record evidence to suggest that the counseling was anything other than a supervisor's attempt to get a probationary employee on track. In short, the Smithsonian had legitimate, non-discriminatory, non-retaliatory reasons for each of Jackson's claims, and he has failed to establish pretext.

## IV. <u>Plaintiff's Hostile Work Environment Claims Fails.</u>

Plaintiff's hostile work environment claims fail for the reasons set forth in Defendant's Motion. Def.'s Mot. at 23-25. Jackson's allegations, Opp'n at 17, fail to meet the "demanding" standard necessary to establish a hostile work environment claim under Title VII, nor could it when Jackson's claims amount to the "ordinary tribulations" of a poorly performing probationary employee in the workplace. *Davila v. Mayorkas*, Civ. A. No. 22-357 (CRC), 2023 WL 2072455, at *8 (D.D.C. Feb. 17, 2023) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Because Jackson does not show "conduct sufficiently severe or pervasive . . . or that it was causally connected to [his] protected activity," *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 63-64 (D.D.C. 2013), the Court should grant summary judgment for the Smithsonian on Jackson's hostile work environment claim.

**CONCLUSION**

For these reasons herein, and those contained in Defendant's Motion (ECF No. 55), the Smithsonian respectfully requests that the Court grant its motion for summary judgment and enter judgment for the Smithsonian.

Dated: June 29, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: /s/ *Dimitar P. Georgiev*
DIMITAR P. GEORGIEV, D.C. Bar # 1735756
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252 – 7678

*Attorneys for the United States of America*